UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| RICHARD BRISCOE, | ) | |
| | ) | Case No. 5:16-cv-00368-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM** |
| | ) | **OPINION** |
| NANCY A. BERRYHILL, Acting | ) | **&** |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Richard Briscoe seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied Briscoe's application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act. [R. 1.] Mr. Briscoe brings this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein will **DENY** Mr. Briscoe's Motion for Summary Judgment [**R. 10**] and will **GRANT** the Commissioner's [**R. 13**.]

**I**

**A**

Plaintiff Richard Briscoe filed a Title II application for a period of disability and disability insurance benefits ("DIB") alleging disability beginning March 4, 2013. [Transcript (hereinafter, "Tr.") 16.] Mr. Briscoe's motion for summary judgment explains that Briscoe suffers from, among other things, severe back pain, a cartilage tear in his right knee, disc extrusion at L5-S1, left hip locking sensation and radiation of back pain to the leg and hip,

sporadic falling in part because his left leg "give[s] out," and obesity. [R. 10-1 at 2-5.] Briscoe's claim for a period of disability and DIB was denied on August 5, 2013, and upon reconsideration on October 14, 2013. [Tr. 16.] Briscoe then requested a hearing that was held in January 2015 before Administrative Law Judge Robert B. Bowling. [*Id.*] Following the hearing, the ALJ issued a final decision denying Briscoe's application for a period of disability and disability insurance benefits. [Tr. 16-29.]

**B**

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. 404.1520.[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. §404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." § 404.1520(f).

At the outset of this case, the ALJ determined that Mr. Briscoe met the insured status requirements of the Social Security Act through December 31, 2018. [Tr. 18.] Then, at step one, the ALJ found Briscoe had not engaged in substantial gainful activity since March 4, 2013, the alleged onset date. [Tr. 18.] The claimant did receive pay after the alleged onset date but these earnings were for vacation pay and not for labor or services provided by Briscoe. [*Id.*] At step two, the ALJ found that Briscoe suffered from severe impairments of "disorders of the spine and joints and obesity." [Tr. 18; *see also* 20 CFR 404.1520(c).] At step three, the ALJ determined Briscoe's combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1. [Tr. 19.] Before moving onto step four, the ALJ considered the entire record and determined Briscoe possessed the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with certain physical and environmental limitations described as follows

> [H]e can stand and walk for only two hours total in an eight hour workday; can sit for only six hours total in an eight hour workday; would require a sit or stand option on a 30 minute basis; can only occasionally push and pull with the bilateral lower extremities; can only occasionally operate foot controls with the bilateral lower extremities; can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs; can only occasionally stoop, kneel, crouch, and craw; should avoid concentrated exposure to extreme colds, wetness, or humidity; should avoid even moderate exposure to vibration; and should avoid all exposure to the use of moving machinery and unprotected heights.

[Tr. 20.]

After explaining how he determined Briscoe's RFC [Tr. 20-27], the ALJ found at step four that, based on this RFC, Briscoe is unable to perform any past relevant work. [Tr. 27.] A vocational expert considered Mr. Briscoe's RFC and the additional environmental and postural limitations imposed by the ALJ, and testified that claimant could perform "occupations at the sedentary level of exertion." [Tr. 28.] The ALJ found that jobs "exist in significant numbers in the national economy that the claimant can perform" after the vocational expert identified qualifying jobs such as "production helper . . . information clerk . . . and call-out operator." [*Id.*] Accordingly, the ALJ concluded that Mr. Briscoe is "not disabled" and that he had not been "under a disability, as defined in the Social Security Act, from March 4, 2013, through the date of this decision." [Tr. 29.] The Appeals Council denied Briscoe's request for review of the ALJ's unfavorable decision. [Tr. 1] Briscoe now seeks judicial review in this Court.

## C

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference

by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## II

### A

The Court must first address Mr. Briscoe's contention that the ALJ committed a reversible error when he "failed at Step Two of the sequential evaluation to recognize Briscoe meets or equals Listing 1.04A." [R. 10 at 7.] Claimant argues that in addition to the requirements found in Listing 1.04, the Administrative Law Judge was required by SSR 02-1p to "take into account [Briscoe's] obesity in combination with a lumbar impairment." [R. 10 at 8.] The Claimant believes that the ALJ rendered an unfavorable decision partially because Briscoe "did not meet Listing 1.04 because there was no evidence of no nerve root compression," but "[t]his is a patently false statement." [R. 9 at 13.]

At Step Three the ALJ is tasked with determining whether a claimant's impairments meet

or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If the impairments do "meet or equal" one of those listed impairments, the claimant is deemed "disabled." *Id.* "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Malone v. Comm'r of Soc. Sec.*, 507 Fed.Appx. 470, 472 (6th Cir.2012) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). For a claimant to demonstrate that his "impairment is the medical equivalent of a listing," he must demonstrate that the impairment is "at least equal in severity and duration to the criteria of any listed impairment." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 411, 414–15 (6th Cir.2011) (citing 20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a)). As the Sixth Circuit has explained, "[a]n administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Id*. Briscoe had the burden of showing that his impairments were equal or equivalent to a listed impairment. *Malone*, 507 Fed.Appx. at 472 (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.2001). "To meet that burden [Briscoe] was required to point to medical signs and laboratory findings that are at least equal to a listed impairment in duration and severity." *Id*.

Briscoe believes that he has met the requirements of Listing 1.04A. [*See* R. 10 at 10.] Section 1.04A of the Listing states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
> With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy

> with associated muscle weakness or muscle weakness) accompanied by
> sensory or reflex loss and, if there is involvement of the lower back,
> positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. The ALJ found that "claimant does not have the ambulatory deficits described in Sections 1.00(B)(2)(b) and 1.00(B)(2)(c), as required by Sections 1.02(A) and 1.02(B)" and there was "no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, as required by Section 1.04." [Tr. 19-20.] Importantly, and despite the Claimant's allegations that the ALJ failed to consider obesity in conjunction with the evidence of record, the ALJ specifically stated that he had "also considered the claimant's obesity in evaluating his impairment under this Section SSR 02-1p." [Tr. 19-20.]

As stated above, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Malone v. Comm'r of Soc. Sec.*, 507 Fed.Appx. 470, 472 (6th Cir.2012) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). While discussing Mr. Briscoe's extensive medical history the ALJ did note that Claimant has significant back pain that "radiates into his hips and legs." [Tr. 21.] There was decreased range of motion "in the thoracic and paraspinals bilaterally" due to thoracic muscle strain and "possible torn muscles". [*Id.*] But, following physical therapy, Briscoe was able to "return to work with minimal pain." [Tr. 21.] After reporting continued low back pain a June 2012 x-ray "of the lumbar spine revealed normal results" but a subsequent MRI revealed "multilevel degenerative changes." [Tr. 22.]

In August 2012, Dr. Stephens performed a back surgery that was initially successful as the claimant "reported that his symptoms had improved since the procedure" but back pain later

7

returned. [Tr. 22.] Mr. Briscoe's post-operative follow up showed "no difficulties in motor strength." *Id.* In fact, the medical record shows that Claimant did not have motor loss (atrophy with muscle weakness) [R. 13 at 6, Tr. 309, 320, 347, 414, 501, 602, 647], claimant did not display consistent sensory or reflex loss [R. 13 at 6], and Mr. Briscoe's medical records failed to indicate positive straight-leg raising tests in both the sitting and supine positions. [R. 13 at 6, Tr. 516, 614.] While the Court is highly sympathetic to the Mr. Briscoe's medical issues, when the objective medical evidence is applied to the standard elucidated in *Malone v. Comm'r of Soc. Sec.*, 507 Fed.Appx. 470, 472 (6th Cir.2012), Mr. Briscoe's "impairment … manifests only some of those criteria" in Section 1.04A of the Listing, therefore "no matter how severe[]" his impairments, he "does not qualify." *Id.*

The ALJ did make mistakes or misinterpretations of the medical evidence. For example, the ALJ stated that "there is no evidence of nerve root compression," but an MRI report from April 29, 2014, found that disc protrusion at L4-5 did "impress[] upon nerve roots in the thecal sac." [Tr. 487-488.] Even so, the Court agrees with the Commissioner's conclusion that this error is harmless. While it is true that the ALJ misinterpreted some medical evidence, Claimant has not been harmed by this error because the Claimant failed to meet the remaining section 1.04A criteria. [*See* R. 13 at 6 referencing *Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009)("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.")] Specifically, the administrative record does not show "positive straight-leg raising test (sitting and supine)" nor does the Claimant direct the court to evidence showing a positive straight-leg test in both the sitting and supine positions. Rather, the Claimant's brief merely directs the court to positive straight leg test results without distinction as to the claimant's posture during these examinations. [*See* R. 10 at 9 ("Dr. Stephens noted

positive Straight Leg Raising on the left. On December 1, 2014, after two separate back surgeries, Amanda Dean noted positive Straight Leg Raising bilaterally."]

Longstanding Sixth Circuit case law dictates that, when an ALJ's decision is supported by substantial evidence, "reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at 509. Here, the ALJ's findings take into account Briscoe's obesity and limitations and are supported by substantial evidence in the record. Any possible error in misstating the nerve root compression is harmless in light of the evidence that supports the ALJ's conclusions and the claimant's failure to meet all the requirements of Listing 1.04A. *See Ulman*, 693 F.3d at 714. It is not this court's responsibility to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations, therefore the Claimant's motion for summary judgment will not be granted on these grounds. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).

**B**

Next, Mr. Briscoe claims that the ALJ failed to examine the entire case record when evaluating the claimant's credibility and his stated limitations. [*See* R. 10 at 10.] Specifically, Briscoe's counsel directs the Court to a number of the ALJ's statements in the administrative opinion. First, the Claimant argues that the ALJ believed that Mr. "Briscoe 'responded well to treatment,' despite evidence directly contradicting this statement." [*Id.*] Briscoe also believes that "no treating provider has [sic] found Briscoe has responded well to treatment." [*Id.*] Finally, Mr. Briscoe cites to a number of comments made by the ALJ that he feels are baseless, lack support, and contradict the great weight of evidence in the record. [*See* R. 10 at 11-12.]

The ALJ evaluated Mr. Briscoe's credibility during the proceedings and analyzed his

subjective complaints. In addition the ALJ considered the entire record and medical evidence in determining an appropriate RFC for Mr. Briscoe. [*See* Tr. 20-27.] ALJ Bowling found that "claimant's statements concerning his impairments and their impact on his ability to work [are] inconsistent with his activity of daily living, the clinical findings, and the course of treatment, and therefore are not entirely credible." [Tr. 27.]

The Sixth Circuit's standard for evaluating pain is based on the factors set forth in 20 C.F.R. § 416.929(c)(2). Under the regulations, a claimant's "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability." *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986) (citing 20 C.F.R. § 404.1529); *see also* 42 U.S.C. §423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. . ."). There must also be objective medical evidence of an underlying condition supporting allegations of pain. *Duncan*, at 852. In *Duncan*, the Sixth Circuit set out a two-part test for evaluating subjective complaints of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

801 F.2d at 853. Thus, the second part of the test requires one of two alternatives. If the claimant establishes one of those requirements, the SSA regulations direct the ALJ to consider various factors in evaluating the claimant's subjective statements about the intensity and persistence of pain or other symptoms. *See* 20 C.F.R. §§404.1529(a), (c)(2)-(3). Such factors include: the claimant's daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication taken to alleviate the pain; treatment other than medication the claimant has received

10

for pain; and any other measures the claimant uses to relieve the pain. *Id*.; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3.

However, even when the medical records confirm the requisite objective medical condition supporting the claimant's complaints, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d 469, 475-76 (6th Cir. 2003) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1990)). When considering the *Felisky* factors listed above, the Sixth Circuit has also recognized that "determinations of credibility related to subjective complaints of pain rest with the ALJ and that the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly." *Duncan*, 801 F.2d at 852; *see also Walters*, 127 F.3d at 531 ("In evaluating complaints of pain, . . . an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.").

Here, ALJ Bowling considered a number of factors that suggested Briscoe's impairments were not as severe as alleged in a detailed seven-page description of the claimant's medical history. [Tr. 20-27.] Briscoe's back pain began in 2012, increased in severity over time, and required two surgeries for treatment. [Tr. 20-21.] Mr. Briscoe's is allegedly substantially limited by chronic lower back pain that radiates into his legs and knee and make it difficult for prolonged concentration. [Tr. 21.] The pain limited his ability to bend, "lift over 5 to 10 pounds; sit over 15 to 20 minutes; stand over 25 minutes; walk over 400 to 500 yards; stoop; kneel; crouch; crawl; and reach up to shave his head." [Tr. 21.] But, early medical intervention and consultations with medical doctors from 2003 to 2008 displayed normal findings with "mild

11

degenerative changes." [*Id.*] By March 2012, Briscoe, a then 36 year old man, complained of back pain following physical exertion. From this Doctors' visit, the claimant was classified as obese and his charts note a weight of 298 pounds. [Tr. 21.] Later hospital visits throughout 2012 hospital initially revealed normal results despite complaints of pain but, eventually, an MRI showed "multilevel degenerative changes" and "disc extrusion at L5-S1." [Tr. 22.]

Dr. Stephens performed a surgery on the claimant's back and, at the post-op follow up, "Mr. Briscoe reported that his symptoms had improved since the procedure." [Tr. 22.] Claimant's counsel suggests that the ALJ improperly reported that Briscoe "responded well to treatment," but this brief improvement following back surgery is one example of Briscoe's positive response to surgical or medical intervention. [R. 10 at 11.] Five months post-op Briscoe's pain was "much improved when compared to the pre-op pain and [] he had returned to full activity." [Tr. 22.] But increasing pain and a subsequent surgery resulted in no improvement, although x-ray testing "revealed no acute abnormalities and alignment was normal." [*Id.*] By July 2013, Briscoe continued attending pain management clinics for back and knee pain, which was likely aggravated by his weight of 304 pounds. [Tr. 23.] Upon consultation with Dr. Wright, the claimant's medications were adjusted and "he was advised to exercise as tolerated." [*Id.*]

While the record does contain positive straight leg test results, in October 2013 the claimant had "normal muscle tone and no atrophy was present in his lower extremities . . . and straight leg raising test was negative." [Tr. 23; *see also* Tr. 24 "Dr. Stephens noted in May 2014… [s]trength was 5/5 in all extremities and straight leg raising was negative."] Mr. Briscoe attended a significant number of appointments with doctors and pain management professionals, many of which resulted in the prescription of pain medication as well as continued

encouragement to exercise. [Tr. 23-24.] The ALJ specifically noted that Dr. Wright's records show that "according to patient medications are working well" but that Mr. Briscoe was still in pain. [Tr. 24.]

At least two doctors agreed that Mr. Briscoe was no longer a candidate for surgical intervention because "no specific nerve root was being compressed" therefore "the claimant was advised to work on activity modification, which included weight loss and cessation of smoking." [Tr. 25.] During one visit to a family care facility in Harrodsburg, the claimant "revealed that he was still trying to get disability as a result of his back and leg pain." [Tr. 26.] Roughly in this time period, around December 2014, Mr. Briscoe "displayed positive straight leg raising at 45 degrees" and noted increasing instances of falling due to leg weakness. [Tr. 26.]

ALJ Bowling determined that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [Tr. 26.] This is because the record "does not indicate that the claimant has strength deficits, circulatory compromise, neurological deficits, muscle spasms, fasciculations, fibrillations, or muscle atrophy or dystrophy, which is often associated with long-standing, severe or intense pain and physical inactivity." [Tr. 26.] The record indicates that Briscoe does not use assistive devices, neurological exams were normal, and "musculoskeletal examination shows no swelling, no effusion, and no deformities." The ALJ also observed that the claimant states he is unable to work but that Briscoe can "keep monthly doctors' appointments; take care of his personal needs; perform household chores, which includes cooking; and grocery shop on occasion." Finally, the ALJ noted that Briscoe had previously testified as to limitations that restrict sitting to 15-30 minutes but, Mr. Briscoe "told Dr. Ballard Wright that he was preparing to take his grandmother

13

to a Christmas show in Cleveland" in a "two days up and two days back" driving trip. [Tr. 26; R. 13 at 8-9.]

The Claimant also takes issue with "completely baseless" statements in the administrative opinion. [R. 10 at 11.] Specifically, the Claimant directs the Court to the ALJ's concluding remarks where ALJ Bowling stated, "[i]n summary, it would seem that the claimant's multiple complaints are based on his reluctance to perform any additional activities rather than a cause for his alleged restrictions. One's preference or lack of motivation is no basis for disability." [Tr. 26.] The Court agrees with the Commissioner's belief that, in context, the statement is not meant to generally disparage the claimant's credibility but, rather, was written as a direct response to the "Plaintiff's allegation that he could not engage in activities, despite the fact that he was actually engaging in those activities." [R. 13 at 11.]

Ultimately, the ALJ has considerable discretion to analyze the claimant's credibility and weigh the evidence. *See Jones*, 336 F.3d 469, 475-76 (6th Cir. 2003) (finding that "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability") (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1990)). The ALJ's ability to observe the claimant and make credibility determinations related to subjective complaints of pain are "invaluable and should not be discarded lightly." *Duncan*, 801 F.2d at 852.

In evaluating Briscoe's credibility, the ALJ considered many, if not all, of the requisite factors and clearly explained his reasoning and the claimant's inconsistent statements as well as the contradictory medical evidence in the record. The regulations do not require a detailed, item-by-item discussion of each credibility factor discussed in *Felisky v. Bowen*, 35 F.3d 1027, and although the ALJ should consider the factors, the ALJ need not engage in such an extensive

14

analysis in every decision, especially where the medical record does not objectively support the claimant's allegations. *Bowman v. Chater*, 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam) (finding the ALJ can fulfill the requirements for evaluating claimant's complaints of pain by considering most of the *Felisky* factors but need not apply each one in every case). Ultimately, ALJ Bowling appropriately analyzed the record and Briscoe's testimony to determine the claimant's credibility and what weight to give to Mr. Briscoe's subjective allegations of pain. The Claimant asserts that it was "reversible error for the ALJ to so erroneously evaluate Briscoe's credibility in direct contradiction to the great weight of the evidence." [R. 10 at 12.] But, after review by the Court, it is evident that ALJ Bowling's determination, that the subjective reports of symptoms were insufficient to establish the alleged disability, was based upon substantial evidence in the record. [*See* Tr. 20-29.] Further, as required by 20 C.F.R. § 404.1529(c)(4), the ALJ appropriately considered inconsistencies in the evidence.

ALJ Bowling found that Mr. Briscoe has not been under a disability as defined by the Social Security Act. [Tr. 29.] After a comprehensive review of the record, administrative hearing, and medical documents, it is evident that the ALJ's findings were reasonable and supported by substantial evidence from the record. As stated above, the decision to uphold the ALJ's decision is made in light of this court's duty to determine whether the Commissioner's decision is supported by substantial evidence. Seeing that it is not this court's responsibility to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations, the ALJ's decision should be upheld as his opinion was based upon a careful review of the record and the opinion is supported by substantial evidence. *Ulman v. Comm'r of Soc. Sec.*, 693

F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).

**III**

Being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

1. Plaintiff Richard Briscoe's Motion for Summary Judgment [**R. 10**] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [**R. 13**] is **GRANTED**; and

3. Judgment in favor of the Defendant shall be entered contemporaneously herewith.

This the 6th day of July, 2017.

Gregory F. Van Tatenhove
United States District Judge